## LEX. & BIG SANDY R. R. CO. v. JOSEPH BONDURANT.

**Railroads — Organization — Capital — Stock — Subscription — Stockholders — Creditors — Sureties — Notes — Judgment Confessed — No Property Found — Attachment — Contribution — Insolvency — Organization Assailed.**

It is too late, after repeated elections of directors by the stockholders and the subscription of thousands of dollars to the capital stock by the counties traversed by the line, for them to assail the legal organization of the company.

**Insolvency of Company.**

As the company is insolvent and cannot complete the object of its creation and must go into liquidation, all the subscribers and stockholders should be made parties in order that each may bear his *pro rata* share of the indebtedness of the corporation.

**Judgment Confessed by President not Conclusive.**

The stockholders and subscribers to the capital stock of a corporation are not concluded by a judgment confessed by its president, virtually to himself, from assailing it and reducing the amount.

**Surety — Payment of Debt.**

A surety cannot have judgment against his principal before payment of the debt for which he is surety.

APPEAL FROM CLARK CIRCUIT COURT.

June 1, 1867.

The court being sufficiently advised delivered the following opinion herein:

The Chief Justice did not preside in this case.

There are some twenty appeals from the judgment assailed and upon this record, but we shall not individualize the different facts relative to each as some general principles apply to all.

Joseph Bondurant was an officer of said Lexington & Big Sandy Railroad Company, was its creditor and surety for large amounts. He obtained various judgments by suit and Richard Apperson as its president has executed a note for $60,000 to said Bondurant and himself which purports to be the note of the company and upon which Apperson as the president of the company

confessed judgment, without suit, in the name of Bondurant, though he says in his deposition he confessed it to himself and Bondurant jointly, and that —————— Clark erroneously entered it up in the name of Bondurant alone. Bondurant having obtained a return of no property found on these judgments brought suit and attached various subscribers for stock in the company and sought to have their indebtedness appropriated to the payment of his judgments.

The stockholders resisted this on various grounds and a protracted litigation has grown up between them and several of these have heretofore been before the court. After repeated annual elections of directors by the stockholders and the subscription of many hundreds of thousands of dollars by the counties traversed by the line of the railroad and by others, it is too late for them to assail its legal organization and its existence as a legal corporation, hence we dismiss this defense with these general remarks.

It satisfactorily appears in the record that Apperson executed said note to Bondurant as the obligation of the company for money, which he and Bondurant had paid as sureties of the company, and also included in a very large amount for which they were still bound as sureties but for which they had not paid, nor can we determine from this record that these have yet been paid. It is also evident from the record that a very large amount of assets have been lost to the company through the unfortunate failure and misappropriation of the securities of the company by their New York agent and through other transactions of its officers and managers.

Therefore, the company may be regarded as hopelessly insolvent and incapable to completing the objects of its creation and must go into liquidation and dissolution.

In this state of case it would be obviously unjust to make some of the stockholders pay their full subscriptions whilst others manage to escape entirely, and as Bondurant and Apperson were both prominent officers and managers of the affairs of this company there is nothing unreasonable in requiring the appellee to bringing the stockholders before the court that it may decree from each solvent one *pro rata* according to what he may owe a sufficiency to pay the liabilities of the company to him. And these stockholders and subscribers should not be concluded by the judgment confessed by Apperson to Bondurant from assailing it and reducing its amount. A note executed and judgment confessed by

the president of the road company virtually to himself cannot be regarded as conclusive upon the stockholders who desire to attack it should be regarded as *prima facie* correct.

It is most clear when this note was executed and confessed by Apperson as president, he and Bondurant had not paid off a large amount for which the company was still bound as principal and they as sureties, hence that much was not really due them nor would the payment to them discharge the liability of the company to the creditors nor exonerate the stockholders from liability to contribution, so far as they may owe on their subscription to these creditors; hence these creditors are necessary parties and the money should be adjudged to them unless Bondurant should by amended petition show that these debts have been paid and if this should be controverted, establish it. If the stockholders should desire it by appropriate pleadings Bondurant should be compelled to show what sums he has paid for said company and how the amount of this note executed by Apperson to himself and Bondurant become due them. And then only so much of it should be adjudged to Bondurant and Apperson's representatives as may thus be made to contribute *pro rata* to its discharge. Those judgments obtained by suit and process on debts due alone to Bondurant or such as Apperson was not personally interested in should be regarded as conclusive, unless assailed for causes subsequent to the judgments, but these should likewise be liquidated by a *pro rata* contribution from the solvent subscribers.

For these general reasons these causes must be reversed with directions to the court below for further proceedings in accordance herewith. As the judgment must be reversed for the above errors, we will not decide upon the effect of the Statute of Limitations nor the effect of the mortgage set up in the case.